166 U.S. 698 (1897)
SENTELL
v.
NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.
No. 232.
Supreme Court of United States.
Submitted March 25, 1897.
Decided April 26, 1897.
ERROR TO THE COURT OF APPEALS FOR THE PARISH OF ORLEANS, IN THE STATE OF LOUISIANA.
*699 Mr. George Denègre and Mr. Omer Villeré for plaintiff in error.
*700 Mr. Henry P. Dart for defendant in error.
MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.
This case turns upon the constitutionality of a law of the State of Louisiana requiring dogs to be placed upon the assessment rolls, and limiting any recovery by the owner to the value fixed by himself for the purpose of taxation.
The dog in question was a valuable Newfoundland bitch, registered in the American Kennel's stud-book, and was kept by her owner for breeding purposes. It seems that while following him in a walk upon the streets, she stopped on the track of the railroad company, and, being otherwise engaged for the moment, failed to notice the approach of an electric car which was coming toward her at great speed; and, being moreover heavy with young, and not possessed of her usual agility, she was caught by the car and instantly killed. The Court of Appeals was evidently of opinion that her owner, knowing of her condition, should not have taken her upon a public thoroughfare without exercising the greatest care and vigilance, and that the accident was largely due to a want of prudence upon his part. The facts, however, were not properly before the court, and the opinion was put upon the ground that the state law was constitutional and valid as a police regulation to prevent the indiscriminate owning and breeding of worthless dogs. The judges also annexed a certificate that the decision was reversed upon the ground that the law was constitutional, and that no other point was passed upon.
By the common law, as well as by the law of most, if not all, the States, dogs are so far recognized as property that an action will lie for their conversion or injury, 2 Bl. Com. 393; Cummings v. Perham, 1 Met. 555; Kinsman v. State, 77 Indiana, 132; State v. McDuffie, 34 N.H. 523; Parker v. Mise, 27 Alabama, 480; Wheatley v. Harris, 4 Sneed, 468; Dodson v. Mock, 4 Dev. & Bat. 146; Perry v. Phipps, 10 Ired. Law, 259; Lentz v. Stroh, 6 S. & R. 33; although, in the absence of a statute, they are not regarded as the subjects of *701 larceny. 2 Bish. New Crim. Law, § 773; Case of Swans, 7 Coke, 86, 91; Norton v. Ladd, 5 N.H. 204; Findlay v. Bear, 8 S. & R. 571; People v. Campbell, 4 Parker C.C. 386; State v. Doe, 79 Indiana, 9; Ward v. State, 48 Alabama, 161; State v. Lymus, 26 Ohio St. 400; State v. Holder, 81 N.C. 527.
The very fact that they are without the protection of the criminal laws shows that property in dogs is of an imperfect or qualified nature, and that they stand, as it were, between animals feræ naturæ in which, until killed or subdued, there is no property, and domestic animals, in which the right of property is perfect and complete. They are not considered as being upon the same plane with horses, cattle, sheep and other domesticated animals, but rather in the category of cats, monkeys, parrots, singing birds and similar animals kept for pleasure, curiosity or caprice. They have no intrinsic value, by which we understand a value common to all dogs as such, and independent of the particular breed or individual. Unlike other domestic animals, they are useful neither as beasts of burden, for draught (except to a limited extent), nor for food. They are peculiar in the fact that they differ among themselves more widely than any other class of animals, and can hardly be said to have a characteristic common to the entire race. While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection, and, above all, for their natural companionship with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. All are more or less subject to attacks of hydrophobic madness.
As it is practically impossible by statute to distinguish between the different breeds, or between the valuable and the worthless, such legislation as has been enacted upon the subject, though nominally including the whole canine race, is really directed against the latter class, and is based upon the theory that the owner of a really valuable dog will feel sufficient interest in him to comply with any reasonable regulation designed to distinguish him from the common herd. Acting upon the principle that there is but a qualified property *702 in them, and that, while private interests require that the valuable ones shall be protected, public interests demand that the worthless shall be exterminated, they have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several States. Laws for the protection of domestic animals are regarded as having but a limited application to dogs and cats; and, regardless of statute, a ferocious dog is looked upon as hostis humani generis, and as having no right to his life which man is bound to respect. Putnam v. Payne, 13 Johns. 312; Hinckley v. Emerson, 4 Cow. 351; Brown v. Carpenter, 26 Vermont, 638; Woolf v. Chalker, 31 Connecticut, 121; Brent v. Kimball, 60 Illinois, 211; Maxwell v. Palmerton, 21 Wend. 407.
Statutes of the general character of the one in question have been enacted in many of the States, and their constitutionality, though often attacked, has been generally, if not universally, upheld. Thus in Tower v. Tower, 18 Pick. 262, an act which authorized "any person to kill any dog or dogs found, and being without a collar," was construed to authorize the killing of a dog out of the enclosure of his owner, although he was under his immediate care, and this was known to the person killing the dog.
In Morey v. Brown, 42 N.H. 373, a statute providing that no person should be liable for killing a dog found without a collar with the name of the owner engraved thereon, was held to justify the killing, although the defendant had actual notice of the ownership of the dog found without such collar. Plaintiff claimed that the act was unconstitutional, but the court held that it was not an act to take private property for public use, or to deprive parties of their property in dogs; but merely to regulate the use and keeping of such property in a manner which seemed to the legislature reasonable and expedient. "It is a mere police regulation, such as we think the legislature might constitutionally establish." To the same effect are Carter v. Dow, 16 Wisconsin, 317; Mitchell v. Williams, 27 Indiana, 62; Haller v. Sheridan, 27 Indiana, 494.
The statutes of Massachusetts, from the earliest colonial *703 period to the present day, are reviewed in an elaborate opinion in Blair v. Forehand, 100 Mass. 136, and laws are shown to have existed, sometimes for the killing of "unruly and ravenous dogs"; sometimes, as in Nantucket in 1743, for the killing of "any dog or bitch whatsoever that shall at any time be found there"; and sometimes for the killing of dogs "strolling out of the enclosure or immediate care of the owner," or going at large without a collar. In the particular case it was held that a statute declaring that any person might, and every police officer and constable should, kill or cause to be killed, all dogs, whenever or wherever found, not licensed and collared according to other provisions of the statute, was within the constitutional limits of the authority of the legislature. Such acts appear to have been very frequent in that State, and their constitutionality generally acquiesced in.
In the more recent case of Morewood v. Wakefield, 133 Mass. 240, the same statute was construed as authorizing any person to kill a dog which was licensed, but had no collar on, provided that he could do so without committing a trespass, although no warrant for the killing of dogs had been issued. The constitutional objection against general warrants, which was the occasion of so much controversy in that State in its colonial days, was held not to apply to dogs, and a warrant was sufficient which ordered the killing of all dogs, living in a town, not duly licensed and collared.
In Ex parte Cooper, 3 Tex. App. 489, it was held that dogs were not property within the tax clause of the constitution, and that a tax upon dogs was a police regulation and a legitimate exercise of the police power. The point was made that dogs, being property, should, under the constitution, be taxed ad valorem as other property was. But it was held that the law was not a tax law in its ordinary sense, but a police regulation.
So in Tenney v. Lenz, 16 Wisconsin, 566, it was held that it was a legitimate exercise of the police power "to regulate and license the keeping of dogs," and that the exercise of that power was based upon the idea that the business licensed, or *704 kind of property regulated, is liable to work mischief, and therefore needs restraints which shall operate as a protection to the public.
In Jenkins v. Ballantyne, 8 Utah, 245, the constitutional question is considered at great length, and the provisions of a city charter authorizing the city to tax, regulate or prohibit the keeping of dogs, and to authorize the destruction of the same, when at large, contrary to the ordinance, and the issuance of a certificate of registration, requiring the wearing of a collar by the dog with his registered number thereon, and providing that all dogs not so registered and collared should be liable to be killed by any person, were valid and were not in violation of the Fifth Amendment to the Constitution.
The only case to the contrary, to which our attention has been called, is that of Mayor &c. v. Meigs, 1 MacArth. 53, in which a city ordinance of Washington, requiring the owner of dogs to obtain a license for the keeping of the same, was held to be illegal. The substance of the opinion seems to be that if the dog be a species of property, which was conceded, it was entitled to the protection of other property, and the owner should not be required to obtain a license for keeping the same.
Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the State, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. That a State, in a bona fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be, which has for its objects the welfare and comfort of the citizen. For instance, meats, fruits and vegetables do not cease to become private property by their decay; but it is clearly within the power of the State to order their destruction in times of epidemic, or whenever they are so exposed as to be deleterious to the public health. There is also property in rags and clothing; but that does not stand in the way of their destruction in case they become infected and dangerous to the public health. No property is more sacred than *705 one's home, and yet a house may be pulled down or blown up by the public authorities, if necessary to avert or stay a general conflagration, and that, too, without recourse against such authorities for the trespass. Bowditch v. Boston, 101 U.S. 16; Mouse's case, 12 Coke, 63; Governor &c. v. Meredith, 4 T.R. 794, 797; Stone v. The Mayor &c., 25 Wend. 157; Russell v. The Mayor &c., 2 Denio, 461.
Other instances of this are found in the power to kill diseased cattle, to destroy obscene books or pictures, or gambling instruments; and, in Lawton v. Steele, 152 U.S. 133, it was held to be within the power of a State to order the summary destruction of fishing nets, the use of which was likely to result in the extinction of valuable fisheries within the waters of the State.
It is true that under the Fourteenth Amendment no State can deprive a person of his life, liberty or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction. As was said in Jenkins v. Ballantyne, 8 Utah, 245, 247, "The emergency may be such as not to admit of the delay essential to judicial inquiry and consideration, or the subject of such action and process may be of such a nature, or the conditions and circumstances in which the act must be performed to effect the protection and give effect to the law may be such as to render judicial inquiry and consideration impracticable."
Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts, which occasionally break forth in the destruction of sheep and other helpless animals. Others, too small to attack these animals, are simply vicious, noisy and pestilent. As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the *706 liability upon the owner, who, moreover, is likely to be pecuniarily irresponsible. In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance. Such legislation is clearly within the police power of the State. It ordinarily takes the form of a license tax, and the identification of the dog by a collar and tag, upon which the name of the owner is sometimes required to be engraved, but other remedies are not uncommon.
In Louisiana there is only a conditional property in dogs. If they are given in by the owner to the assessor, and placed upon the assessment rolls, they are entitled to the same legal guaranties as other personal property, though in actions for their death or injury the owner is limited in the amount of his recovery to the value fixed by himself in the last assessment. It is only under these restrictions that dogs are recognized as property. In addition to this, dogs are required by the municipal ordinance of New Orleans to be provided with a tag, obtained from the treasurer, for which the owner pays a license tax of two dollars. While these regulations are more than ordinarily stringent, and might be declared to be unconstitutional, if applied to domestic animals generally, there is nothing in them of which the owner of a dog has any legal right to complain. It is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets. The statute really puts a premium upon valuable dogs, by giving them a recognized position, and by permitting the owner to put his own estimate upon them.
There is nothing in this law that is not within the police power, or of which the plaintiff has a right to complain, and the judgment of the Court of Appeals is, therefore,
Affirmed.